## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

**CHRISTOPHER OLEN BAKER,**

       **Plaintiff,**

**vs.**                                          **Case No. CIV-17-368-JHP-SPS**

**WARDEN YATES, et al.,**

       **Defendants.**

## DEFENDANTS' MOTION FOR SUMMARY
## JUDGMENT AND BRIEF IN SUPPORT

Submitted by:
By: DARRELL L. MOORE, OBA 6332
COURT PLACE AT NORTH VANN
P.O. BOX 368
PRYOR, OK  74362
(918) 825-0332
ATTORNEY FOR DEFENDANTS
5 NOVEMBER  2018

## TABLE OF CONTENTS

STATEMENT OF THE CASE ........................................................................ 1

STATEMENT OF UNCONTROVERTED FACTS ........................................ 2

SUMMARY JUDGMENT STANDARD ...................................................... 7

ARGUMENT AND AUTHORITIES ............................................................ 7

PROPOSITION I:
THE STATUTE OF LIMITATIONS
GOVERNING PLAINTIFF'S
CASE IS TWO YEARS. ............................................................................. 7

PROPOSITION II:
MR. BAKER FAILED TO FIRST EXHAUST
ADMINISTRATIVE REMEDIES AS TO HIS
ALLEGATION DEFENDANTS WERE DELIBERATELY
INDIFFERENT TO HIS MEDICAL NEEDS ............................................. 8

     a. Exhaustion is Mandatory .............................................................. 9

     b. An Administrative Remedies Process was
     in place at Davis Correctional Facility. ........................................... 10

     c. Mr. Baker did not exhaust all issues he
     has brought before this Court ......................................................... 11

     d. Proper exhaustion is required. ..................................................... 14

PROPOSITION III:
DEFENDANTS WERE NOT DELIBERATELY
INDIFFERENT TO PLAINTIFF'S
SERIOUS MEDICAL NEEDS .................................................................. 15

PROPOSITION IV:
SUMMARY JUDGMENT SHOULD BE GRANTED IN
FAVOR OF WARDEN YATES ON PLAINTIFF'S CLAIMS ................... 20

CONCLUSION ......................................................................................... 22

**TABLE OF EXHIBITS**

Exhibit 1:      Offender Lookup

Exhibit 2:      Affidavit of Terry Underwood

Exhibit 3:      Grievance Policy OP-090124 (2015 & 2016)

Exhibit 4:      Grievance Records

Exhibit 5:      Affidavit of Dr. Sanders

Exhibit 6:      Affidavit of Ray Larimer

## TABLE OF AUTHORITIES

**STATUTES AND RULES**

42 U.S.C. § 1983 .................................................................... 2,7,8,9,20,21

42 U.S.C. §1997e(a) ................................................................ 9,15

FRCP Rule 56 ....................................................................... 1

LCvR 7.1(l) .......................................................................... 1

12 O.S. § 95(A)(3) ................................................................. 8

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ...................... 7

Billman v. Indiana Department of Corrections, et al.,
56 F.3d 785 (7th Cir.1995) ...................................................... 20

Booth v. Churner, 532 U.S. 731 (2001) ....................................... 15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .............................. 7

Farmer v. Brennan, 511 U.S. 825, 834 (1994) .............................. 19

Green v. Branson, 108 F.3d 1296 (10th Cir. 1997) ......................... 20

Hemphill v. Jones, 343 F. App'x 329 (10th Cir. 2009) ...................... 14

Holden v. Dinwiddie, 343 F. App'x 297 (10th Cir. 2009) ................... 14

Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910,
166 L.Ed.2d 798 (2007) ......................................................... 9,10,15

Langley v. Adams County, Colo., 987 F.2d 1473
(10th Cir.1993) .................................................................... 20

iii

Little v. Jones, 607 F.3d 1245, 1249 (10th Cir.2010) ............................ 10

Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988) ............................ 8,20

McCracken v. Jones, 562 F.2d 22  (10th Cir. 1977),
cert. denied, 435 U.S. 917 (1978) ............................................ 20

Pahls v. Thomas, 718 F.3d 1210 (10th Cir. 2013) ........................... 21


Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002) ...................... 9

Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004) ............ 9

Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) ............................. 19

Smith v. Beck, 165 F. App'x 681 (10th Cir. 2006) ........................... 14

True v. United States, 190 F.3d 1165 (10th Cir.1999) ...................... 7

Whitmore v. Jones, 456 F. App'x 747 (10th Cir. 2012) ...................... 10

Wilson v. Garcia, 471 U.S. 261 (1985) ...................................... 7

Williams v. Sirmon, 350 F. App'x 294 (10th Cir. 2009) ..................... 14

Woodford v. Ngo, 548 U.S. 81 (2006) ........................................ 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CHRISTOPHER OLEN BAKER,** | |
| **Plaintiff,** | |
| **vs.** | **Case No. CIV-17-368-JHP-SPS** |
| **WARDEN YATES, et al.,** | |
| **Defendants.** | |

**DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

COME NOW Defendants Yates, Larimer, and Sanders by and through their attorney of record, Darrell L. Moore, OBA #6332, of J. Ralph Moore, P.C., Attorneys at Law, Court Place and North Vann, P.O. Box 368, Pryor, OK 74362, and pursuant to the Federal Rules of Civil Procedure, Rule 56, do submit this Motion for Summary Judgment. Pursuant to LCvR 7.1(b), the reasons supporting judgment being granted in favor of these Defendants on Plaintiff's claim are set out more fully in an accompanying brief incorporated herewith.

## STATEMENT OF THE CASE

Plaintiff, Christopher Baker, ODOC# 149839 appears pro se. Plaintiff Baker is an inmate in the custody of the Oklahoma Department of Corrections, who is currently housed at Davis Correctional Facility, Holdenville, Oklahoma. At all times relevant to the allegations contained in his lawsuit Plaintiff Baker was housed at Davis Correctional Facility pursuant to a contract between Corrections Corporation of America, Inc., (CCA) and the Oklahoma DOC.

1

Defendants Yates, Larimer, and Sanders are employees of CCA at the Davis Correctional Facility. Defendant Yates is the facility Warden, Defendant Larimer is the facility Health Services Administrator, and Defendant Sanders is the facility physician. Plaintiff brought this action pursuant to the provisions of 42 U.S.C. § 1983. *See* Plaintiff's complaint. Plaintiff asserts Defendants were deliberately indifferent to his serious medical needs.

## STATEMENT OF UNCONTROVERTED FACTS

1.      Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections. *See* Exhibit 1, OK DOC Offender Lookup.

2.      Davis Correctional Facility is a private prison contracted with the Oklahoma Department of Corrections for the housing of DOC inmates. *See* affidavit of Terry Underwood, attached hereto as Exhibit 2, ¶2.

3.      Plaintiff Baker arrived at Davis Correctional Facility on July 7, 2005. *See* affidavit of Terry Underwood, attached hereto as Exhibit 2, ¶2.

4.      Plaintiff's action was filed in this Court on October 2, 2017. [Doc.# 1]

5.      An administrative remedies grievance policy is available for inmate use at Davis Correctional Facility, the Oklahoma DOC administrative remedies grievance policy - OP-090124. This policy had been in place and used at the Davis facility for many years prior to the Plaintiff's filing of his grievances and this lawsuit. *See* Exhibit 2, affidavit of Terry Underwood, ¶4, 20; and Exhibit 3, OP-090124.

6.      The Oklahoma DOC administrative remedies policy sets out the steps an inmate must follow to exhaust administrative remedies as to any claims. *See* Exhibit 2, affidavit of Terry Underwood, ¶4; *See* DOC OP-090124, attached hereto as Exhibit 3.

7.       The Oklahoma DOC administrative remedies policy, OP-090124, requires an inmate to initially attempt to resolve any issue through informal resolution. Then, if the inmate remains not satisfied, he must file a formal grievance.  The final step directs an inmate to appeal the matter to the Oklahoma DOC's Administrative Review Authority and/or Chief Medical Officer.  The ruling of the administrative review authority or chief medical officer is final and concludes the administrative remedy process for inmates within the jurisdiction of the Oklahoma Department of Corrections. Only then will an Oklahoma DOC inmate have satisfied the exhaustion of internal administrative remedies required by Oklahoma Statute, 57 O.S. § 564.  *See* Exhibit 3, DOC OP-090124, ¶VII, Appeal Process and Procedure; *See* Exhibit 2, affidavit of Terry Underwood, ¶5.

8.       Mr. Baker filed three (3) grievances between October 1, 2015 and the filing of this action on October 2, 2017.  *See* Exhibit 2, ¶7 Affidavit of Grievance Coordinator Underwood.

9.       Mr. Baker submitted a Request to Staff to Health Services Administrator Larimer on October 5, 2015 stating that on September 22, 2015 he had been scheduled to see Dr. Sanders and in the submitted request he asked to see Dr. Sanders.  The Request to Staff was responded to by the Health Services Administrator on October 6, 2015, noting: *You were seen by Ms. Castro and her and Dr. Sanders discussed your medical record. There is no need to see Dr. Sanders*.  *See* Exhibit 2, ¶8, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Page 5, grievance records.

10.       Plaintiff Baker's Grievance No. 2015-1001-346-G, dated October 13, 2015, was stamped as received on October 15, 2015.  The relief requested by Mr. Baker was as follows – *Give me humane and proper health care, by allowing me to see Dr.*

*Sanders, to try to ease my pain and suffering, please??* That grievance was returned unanswered as having been filed out of time. *See* Exhibit 2, ¶9, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Pages 1-4, grievance records.

11. Plaintiff Baker submitted a Request to Staff to Health Services Administrator Larimer dated November 5, 2015. The Request to Staff stated prescribed medications ran out on November 2, 2015 and asked that he see Dr. Sanders and get his seizure medication renewed. The Request to Staff was responded to by the Health Services Administrator on November 9, 2015, noting: *Your meds were renewed by Dr. Sanders. See* Exhibit 2, ¶12, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Page 11, grievance records.

12. Plaintiff Baker submitted Grievance No. 2015-1001-383-G dated November 15, 2015 and the grievance was stamped as received on November 16, 2015. The relief requested by Mr. Baker was as follows – *Allow me to see Dr. Sanders, please?* This grievance was answered on December 7, 2015 by HSA Larimer, noting that Dr. Sanders reviewed Offender Baker's request and renewed his seizure medication. Offender Baker's request was granted. *See* Exhibit 2, ¶13, 14, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Pages 8-10, grievance records.

13. Plaintiff Baker submitted a Request to Staff to Health Services Administrator Larimer on June 15, 2016 indicating an outside specialist had ordered medication adjustments, and he asked that the adjustments be implemented at the facility. The Request to Staff was responded to on June 17, 2016 noting: *Sir, Dr. Sanders has reviewed your chart as well as spoke with the neurologist & you are currently on the medication regiment that he feels is best & that has discussed previously your meds were*

4

*renewed by Dr. Sanders.  See* Exhibit 2, ¶15, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Page 21, grievance records.

14.     Plaintiff Baker dated Grievance No. 2016-1001-184-G June 21, 2016 and was stamped as received on June 24, 2016. The relief requested by Mr. Baker was as follows - *Immediately implement the prescription orders of Dr. El Zind, and I will waive the formal apology from HSA Administrative staff.*  This grievance was answered on June 30, 2016 by HSA Larimer, noting that Dr. Sanders had reviewed inmate Baker's chart, had spoken with the neurologist and I/M Baker was currently on the medication regiment that Dr. Sanders felt was best and it had been discussed previously with inmate Baker. Mr. Baker's request for relief was denied.  *See* Exhibit 2, ¶16, 17, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Pages 19-21, grievance records.

15.     Mr. Baker appealed the facility level decision to the Oklahoma Department of Corrections Chief Medical Office by appeal dated August 29, 2016.  The Appeal was answered by Buddy Honaker on September 29, 2016 and the requested relief was denied. *See* Exhibit 2, ¶18, 19, Affidavit of Grievance Coordinator Underwood; *see also* Exhibit 4, Pages 14-18, grievance records.

16.     Mr. Baker has been seen multiple times in the Davis facility's medical clinic by the facility physician, nurse practitioners, Registered Nurses, Licensed Practical Nurses, and other medical staff. *See* Exhibit 5, ¶6, Affidavit of Fred S. Sanders, D.O.

17.     Mr. Baker reported to the medical staff he was having seizures.  He was prescribed and provided anti-seizure medications.  *See* Exhibit 5, ¶7, Affidavit of Fred S. Sanders, D.O.

18.     Mr. Baker's blood-levels of Neurontin were monitored by the prison facility medical staff and adjustments in medication dosages were made to maintain blood-levels of gabapentin (Neurontin) within the therapeutic range. *See* Exhibit 5, ¶8, Affidavit of Fred S. Sanders, D.O.

19.     To obtain clarity on a diagnosis for Mr. Baker's reported seizure activity, Dr. Sanders requested and obtained approval for Mr. Baker to be seen by a neurologist. *See* Exhibit 5, ¶9, Affidavit of Fred S. Sanders, D.O.

20.     When Mr. Baker self-reported an increase in seizure activity, Dr. Sanders increased the prescribed daily dosage of gabapentin (Neurontin). *See* Exhibit 5, ¶10, Affidavit of Fred S. Sanders, D.O.

21.     On March 22, 2016, Mr. Baker was transported from the prison facility for a consultation examination with Nabila H. El Zind, M.D., a board-certified neurologist. Dr. El Zind asked that a CT scan of Mr. Baker's head be obtained, and she also wanted to conduct EEG testing. *See* Exhibit 5, ¶10, Affidavit of Fred S. Sanders, D.O.

22.     Mr. Baker was transported from the facility to Holdenville General Hospital for a CT scan of his head.  The CT scan was read by a radiologist and reported as no acute findings. *See* Exhibit 5, ¶13, Affidavit of Fred S. Sanders, D.O.

23.     Dr. El Zind conducted an electroencephalogram (EEG) and reported the test results to be normal.  *See* Exhibit 5, ¶13, Affidavit of Fred S. Sanders, D.O.

24.     Dr. Sanders and Dr. El Zind conferred regarding Mr. Baker. *See* Exhibit 5, ¶14, Affidavit of Fred S. Sanders, D.O.

25.     Dr. Sanders was the treating physician for Mr. Baker.  Dr. Sanders considered recommendations from Dr. El Zind regarding prescribed medications and

dosages of those prescribed medications. *See* Exhibit 5, ¶15, 16, 18, Affidavit of Fred S. Sanders, D.O.

26.     Mr. Baker's seizure activity was treated by the facility's medical staff consistent with the community standard of care. *See* Exhibit 5, ¶20, Affidavit of Fred S. Sanders, D.O.; *see also* Exhibit 6, ¶10, Affidavit of Ray Larimer, R.N., Health Services Administrator.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).  An issue of material fact is genuine only if a party presents facts sufficient to show that a reasonable jury could find in favor of the non-movant. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The existence of a factual issue does not preclude summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side.  *See* True v. United States, 190 F.3d 1165, 1177 (10th Cir.1999).

## ARGUMENT AND AUTHORITIES

## PROPOSITION I:

### THE STATUTE OF LIMITATIONS GOVERNING
### PLAINTIFF'S CASE IS TWO YEARS.

It is well established within the Tenth Circuit that the period of limitations for filing a Section 1983 action is governed by the forum state's statute for personal injury actions. *See* Wilson v. Garcia, 471 U.S. 261, 276-80 (1985).

In Oklahoma, the limitations period for a personal injury action is <u>two</u> (2) years. *See* 12 O.S. § 95(A)(3).  In 1988, the Tenth Circuit Court of Appeals determined that in Oklahoma the applicable period of limitations regarding a §1983 action was two years. *See* <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1522 (10th Cir. 1988).

Plaintiff has been housed at Davis Correctional Facility since July 2005.   In his complaint filed with this Honorable Court on October 2, 2017, he makes general, un-dated assertions regarding medical care and treatment he has received at that prison facility.  However, as noted above, the applicable statute of limitations period for his filing would be two years prior to the date of filing of his action. Therefore, any claims or allegations made by Plaintiff for a time earlier than October 2, 2015 were not timely filed and, as a matter of law, summary judgment should be granted in favor Defendants.

## <u>PROPOSITION II:</u>

### MR. BAKER FAILED TO FIRST EXHAUST ADMINISTRATIVE REMEDIES AS TO HIS ALLEGATION DEFENDANTS WERE DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS.

Plaintiff filed his Complaint with the District Court on October 2, 2017 [Doc.# 1]. Plaintiff asserts the Defendants were deliberately indifferent to his serious medical needs.

Plaintiff failed to first exhaust administrative remedies as to this claim. A review of Plaintiff's complaint, a reading of the existing Oklahoma Department of Corrections administrative remedies grievance policy (OP-090124), and a review of Plaintiff's use of the administrative remedies process shows he failed to first exhaust administrative remedies as to the claim he has brought forward to the Court.

### a. **Exhaustion is Mandatory.**

The Prison Litigation Reform Act (PLRA), enacted by the Congress in 1996,

directs prisoners to exhaust administrative remedies before initiating legal action

complaining of prison conditions under section 1983. The PLRA states, as follows:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

In Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002), the Supreme Court

determined what the §1997e(a) term "prison conditions" means. Justice Ginsburg,

delivering the opinion of a unanimous Court, stated as follows:

> "For the reasons stated, we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, *at* 532.

The Supreme Court decision of Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166

L.Ed.2d 798 (2007) did nothing to weaken, modify, or repudiate the Porter decision that

an inmate must exhaust administrative remedies.  In Jones, 918-919, the Supreme Court,

when referring to the Porter decision, stated, "There is no question that exhaustion is

mandatory under the PLRA and that unexhausted claims cannot be brought in court."

It makes no difference that Plaintiff is an inmate held in a privately-operated

prison facility.  The exhaustion requirement applies fully when the plaintiff is a federal or

state inmate held in a privately-operated prison facility.  *See* Ross v. County of

Bernalillo, 365 F.3d 1181, 1184 (10th Cir. 2004), abrogated in part on other grounds,

Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910 (2007).

A prison system's procedures define the administrative remedies that must be exhausted.  *See* <u>Little v. Jones</u>, 607 F.3d 1245, 1249 (10th Cir.2010) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)); *see also* <u>Whitmore v. Jones</u>, 456 F. App'x 747, 749 (10th Cir. 2012).

In this present case, the procedures to be followed by Mr. Baker were outlined in Oklahoma DOC Policy OP-090124.  *See* Exhibit 2, ¶4, Affidavit of Terry Underwood.

**b. <u>An Administrative Remedies Process was in place at Davis Correctional Facility</u>.**

According to the prison facility Grievance Coordinator, Terry Underwood, there was at all times relevant to this action an administrative remedies grievance policy available for inmate use at Davis Correctional Facility.  Davis Correctional Facility utilizes the Oklahoma DOC administrative remedies grievance policy - OP-090124.  *See* Exhibit 2, affidavit of Terry Underwood, ¶4, 20; *see also* Policy OP-090124 attached hereto as Exhibit 3.

The Oklahoma DOC administrative remedies policy sets out the steps an inmate must follow to exhaust administrative remedies as to any claims.  The policy, OP-090124, requires an inmate to initially attempt to resolve any issue through informal resolution.  *See* Exhibit 3, OP-090124, ¶V, Pages 6-8.  Then, if the inmate remains not satisfied, he must file a formal grievance.  *See* Exhibit 3, OP-090124, ¶IV, (2015: Pgs 8-12 & 2016: Pgs 29-33).  The final step in the administrative remedies process directs an inmate to make a final appeal of his concerns to the Oklahoma DOC Administrative Review Authority or in the case of medical grievances, to the office of the Chief Medical Officer for the Department of Corrections.  *See* Exhibit 2, affidavit of Terry Underwood, ¶5; *see also* Exhibit 3, OP-090124, ¶VII, (2015: Pgs 12-15 & 2016: Pgs 33-36).

**c. <u>Mr. Baker did not exhaust all issues he has brought before this Court</u>.**

Mr. Baker filed three (3) grievances during the two years prior to the filing of his complaint on October 2, 2017.  And, in his complaint, he alleged Defendants had been deliberately indifferent to his serious medical needs. His use of the administrative remedies process did not first exhaust the claim he later brought forward to the Court.

**Grievance No. 2015-1001-346-G: (Exhibit 4, Pgs. 1-7)**

Plaintiff Baker submitted a Request to Staff to Health Services Administrator Larimer on October 5, 2015 indicating that on September 22, 2015 he had been scheduled to see Dr. Sanders and he asked to see Dr. Sanders.  The Request to Staff was responded to by Health Services Administrator Larimer on October 6, 2015 noting: *You were seen by Ms. Castro and her and Dr. Sanders discussed your medical record.  There is no need to see Dr. Sanders.*

Plaintiff Baker submitted Grievance No. 2015-1001-346-G on October 15, 2015 asking that he be allowed to see Dr. Sanders. That grievance was returned unanswered to him because the Request to Staff had not been timely filed.

Mr. Baker's later claim that Defendants had been deliberately indifferent to a serious medical need was not exhausted by Plaintiff Baker with this grievance submission.  He makes no assertion medical staff was inattentive or were ignoring him. Clearly, in the administrative remedies submission, Mr. Baker acknowledged he had been seen by medical personnel – i.e., Nurse Practitioner Burkhalter and also Nurse Practitioner Castro.

**Grievance No. 2015-1001-383-G: (Exhibit 4, Pgs. 8-13)**

Plaintiff Baker submitted a Request to Staff to Health Services Administrator Larimer on November 6, 2015 indicating that he needed to see Dr. Sanders to get seizure medications renewed.  The Request to Staff was responded to by Health Services Administrator Larimer on November 9, 2015 that, *your meds were renewed by Dr. Sanders.*

Though he was notified the medications had been renewed by Dr. Sanders, inmate Baker submitted Grievance No. 2015-1001-383-G on November 16, 2015 requesting that he see Dr. Sanders to get his medications renewed. The grievance was answered as follows:  *Offender Baker requested to see Dr. Sanders and get his seizure medication renewed.  After an investigation of the matter by Ray Larimer, HSA, Dr. Sanders reviewed Offender Baker's request and renewed his seizure medication. Offender Baker's request is GRANTED.*  Mr. Baker's later claim brought to the District Court that Defendants had been deliberately indifferent to a serious medical need was not exhausted by him with this grievance submission.  Again, Mr. Baker makes no assertion in his administrative filing medical staff was inattentive or were ignoring him. In fact, he was told by HSA Larimer on November 9, 2015 that Dr. Sanders <u>had</u> renewed the seizure medications.

**Grievance No. 2016-1001-184-G: (Exhibit 4, Pgs. 14-22)**

Plaintiff Baker submitted a Request to Staff to "Davis Medical" and Dr. Sanders on June 15, 2016 indicating he had been seen by an outside neurologist and Mr. Baker requested "implement the changes ordered by the specialist." The Request to Staff was responded to by Jamie Lysinger, R.N., on June 17, 2016 noting: *Sir, Dr. Sanders has*

*reviewed your chart as well as spoke with the neurologist & you are currently on the medication regiment that he feels is best and that has discussed previously with you.*

Plaintiff Baker submitted Grievance No. 2016-1001-184-G to Warden Tim Wilkinson on June 24, 2016 stating: *Immediately implement the prescription orders of Dr. El Zind, and I will waive the formal apology from HSA Administrative staff.* That grievance was responded to by HSA Larimer on June 30, 2016 as follows: *IM Baker wanted to receive the medication ordered by the specialist. After an investigation of the matter by Jamie Lysinger, Clinical Supervisor, it was determined that IM Baker's chart was reviewed by Dr. Sanders here at DCF. Dr. Sanders spoke with the neurologist and IM Baker is currently on the medication regiment that Dr. Sanders feels is best and it has been discussed previously with IM Baker. IM Baker's Relief is DENIED.*

Plaintiff Baker appealed the prison facility decision to the Oklahoma Department of Corrections Chief Medical Office on August 29, 2016. The Appeal was denied and the DOC Medical Services Administrator's response was as follows:

> *Pertinent information from your electronic health record was reviewed. According to your record, a medical provider met with you on July 19, 2016 and your medication regimen was discussed. However, the medical provider did not adjust your Neurontin dosage.*
>
> *According to OP·140121, the health care provider who initiates the outside medical referral request must approve the consultant's recommendations, prior to implementing them. The medical provider may or may not elect to adhere to the consultant's recommendations.*
>
> *If you need further assistance with any health concerns, you must submit a "Request for Health Services" form (attached) to the medical unit at your facility, via the sick call process.* **Disposition: (3) -Relief denied.**

Mr. Baker's later claim brought to the District Court that Defendants had been deliberately indifferent to a serious medical need was not exhausted by him with this

grievance submission.  Mr. Baker makes no assertion he was being denied medical care; in fact, he acknowledged he was being seen by an outside specialist. In the response to his submitted Request to Staff, he was told Dr. Sanders had reviewed his chart, had spoken with the neurologist, and that he (Mr. Baker) was on the medication regimen Dr. Sanders felt was best. A few weeks later when he received a response to his grievance, Mr. Baker was told the same thing.  And, then, with his appeal to the DOC medical office, the DOC Medical Services Administrator also plainly stated that medical staff had met with Plaintiff and that it was up to the treating physician whether to adhere to a consultant's recommendation.

### d. **Proper exhaustion is required.**

The Courts have accepted DOC OP-090124 and its procedural process and rules. *See* Hemphill v. Jones, 343 F. App'x 329, 332 (10th Cir. 2009); Smith v. Beck, 165 F. App'x 681, 683-84 (10th Cir. 2006); Holden v. Dinwiddie, 343 F. App'x 297, 299 (10th Cir. 2009); and, Williams v. Sirmon, 350 F. App'x 294, 298 (10th Cir. 2009).

Plaintiff Baker clearly had access to the process.  He made submissions on three occasions during the two years prior to him filing his lawsuit. However, in each instance Plaintiff did not address, and exhaust, how Defendants at Davis Correctional Facility were indifferent to his serious medical needs.  He was being seen by medical staff, he was being seen by an outside specialist, diagnostic tests were obtained, and prescription medications were being provided to him.  His use of the administrative remedies process did not exhaust his claim later brought to the District Court that the Defendants had been deliberately indifferent to his serious medical needs.

The Oklahoma DOC policy requirements and procedures are no doubt specific but they are not so complicated or convoluted as to justify not complying with them.  By its enactment of the exhaustion requirement of § 1997e(a) of the PLRA, Congress eliminated a district court's discretion to dispense with the grievance procedures set by prison officials. *See* Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).  It did so to "eliminate unwarranted federal-court interference with the administration of prisons." *Id.* at 93. The Supreme Court has noted that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *See* Jones v. Bock, 549 U.S. 199, 218 (2007).

This Honorable Court should determine Mr. Baker failed to first exhaust administrative remedies as to his claim of deliberate indifference before bringing this action to the District Court.  To determine otherwise would, as noted by Justice Alito in Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006), turn the PLRA's requirement for *proper* exhaustion into a largely useless appendage.

Summary judgment should be granted in favor of Defendants.

## PROPOSITION III:

### DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

Plaintiff asserts Defendants were deliberately indifferent to his serious medical needs.  Mr. Baker's pertinent medical records and the affidavit testimony of Dr. Sanders and Nurse Larimer clearly demonstrate otherwise.

Plaintiff's pertinent medical records were filed with the Court as Exhibit 1 of the *Special Report.* [Doc.#17-1].  In order to promote efficiency and judicial economy, Defendants refer to that Exhibit herein, with specific page numbers.

The records attached as Exhibit 1 to the Special Report [Doc.# 17-1] show that in October 2015 Plaintiff submitted several Requests for Health Services and all of those requests were responded to in a timely manner.  Additionally, Mr. Baker was seen by medical staff on at least three occasions, including an appointment on October 5, 2015 when he was seen by the facility Nurse Practitioner, Denise Castro, MSN, ARNP, ANP-BC, for complaints of neck and left clavicle pain.  Nurse Castro charted that Plaintiff was "jovial and cooperative today."  *See* Special Report, Exhibit 1, [Doc.# 17-1] Plaintiff's Medical Records, Pgs. 3-7.

On November 3, 2015 Plaintiff submitted a request to staff indicating several prescribed medications needed to be renewed.  He submitted another request two days later, on November 5, 2015, specifically requesting renewal of gabapentin. *See* Medical Records, Special Report, Exhibit 1, [Doc.# 17-1] Pgs. 16 and 17.  That same date Dr. Sanders renewed the Plaintiff's medications and charted the following note to Plaintiff Baker:

> Sir: First I want to thank you with being compliant with taking your medications.  Your most recent lab showed your gabapentin level to be too high and at risk of possible side effects.  The Regional Medical Director has requested that we lower the dose from 3600mg to 2400mg which may help with your mentation and stability.  I got him to approve scheduling you with a neurologist for evaluation, poss. brain wave test, and evaluation to determine what might be the best treatment for you.  Obviously, since you are still reporting having seizures, what we are doing doesn't seem to be working.  At this point I do not know how long it will take to get an appointment, but we will try to get it as soon as possible. Thanks again.

> *See* Special Report, Exhibit 1, [Doc.# 17-1] Pg. 19.

Plaintiff later told Dr. Sanders that he had not received this note. When Plaintiff was seen on November 18, 2015 by Dr. Sanders, the doctor discussed medication dosing and reasons for a change in dosage.  The physician had noted Plaintiff's blood tests had shown that levels of Neurontin were too high. *See* Exhibit 5, affidavit of Dr. Sanders, ¶8-10.  According to Dr. Sanders, Plaintiff became upset started yelling and cursing and the medical visit was terminated.  *See* Plaintiff's Medical Records, Pgs. 29-36. Dr. Sanders did chart that he raised the prescribed dosage of Neurontin. *See* Exhibit 5, affidavit of Dr. Sanders, ¶10.

Dr. Sanders and the medical staff at the facility arranged for an outside consultation for Mr. Baker with a neurologist, Nabila H. El Zind, M.D., a board-certified neurologist. Dr. El Zind asked that a CT scan of Mr. Baker's head be obtained, and she also wanted to conduct EEG testing. *See* Exhibit 5, affidavit of Dr. Sanders, ¶12.

Mr. Baker was transported from the prison facility to meet with Dr. El Zind on March 22, 2016, May 30, 2016, and December 5, 2016. *See* Exhibit 5, affidavit of Dr. Sanders, ¶12, 15, and 18.  Mr. Baker was transported from the prison facility to Holdenville General Hospital on April 15, 2016 for a CT scan of his head. *See* Exhibit 5, affidavit of Dr. Sanders, ¶13. On April 28, 2016, Dr. El Zind performed an electroencephalogram. *See* Exhibit 5, affidavit of Dr. Sanders, ¶13. No acute findings were reported from the CT scan and Dr. El Zind reported the EEG to have been a normal test. *See* Exhibit 5, affidavit of Dr. Sanders, ¶13.

Dr. El Zind did recommend to Dr. Sanders that the prescribed daily dosage of gabapentin (Neurontin) be increased to 3600 mg per day. However, as explained by Dr. Sanders, because Mr. Baker's blood-level of Neurontin had been measured to be well

outside the therapeutic range when the dosage had previously been at 3600 mg per day, he, as the treating physician, determined it would not be in Mr. Baker's best interests to do so at that time. *See* Exhibit 5, affidavit of Dr. Sanders, ¶12.

Dr. Sanders and Dr. El Zind directly spoke regarding Mr. Baker and his medical condition. They agreed that given Mr. Baker's lab results and the CT scan result that the medication dosages were sufficient and correct at that time for his reported seizure activity. *See* Exhibit 5, affidavit of Dr. Sanders, ¶14.

According to Dr. Sanders, Neurontin slows down nerve impulse transmission to the brain and this makes it an appropriate anti-seizure medication for epileptic seizures. Generally, it is not used to treat non-epileptic pseudo seizures. However, because of its sedative effect, it also can be helpful when treating mental health issues and it also acts somewhat as a pain reliever. According to Dr. Sanders, Mr. Baker did present periodically with mental health issues and was seen by the facility psychiatrist and he also did periodically make generalized complaints of pain he related to pre-incarceration motor vehicle accidents, falls in his cell, and interactions with other inmates.  *See* Exhibit 5, affidavit of Dr. Sanders, ¶17.

Dr. Sanders, the treating physician, adjusted medications being prescribed to Mr. Baker, adding medications or deleting medications as determined medically necessary. *See* Exhibit 5, affidavit of Dr. Sanders, ¶15, 16, 18.

A review of Mr. Baker's medical records demonstrates that he, Mr. Baker, wanted to dictate the terms of his medical care, the medications he was to receive, the dosing, and the timing for those dosages.  The medical records and the affidavit testimony of Dr. Sanders and Nurse Larimer demonstrate that Dr. Sanders and the medical staff kept an

appropriately close watch on Plaintiff and his medical condition, medical testing, and prescribed medications.  Dr. Sanders and the facility medical staff sought an outside specialist consult and anticipated the need for further diagnostic testing.  That diagnostic testing revealed no acute findings and normal test results. Dr. Sanders conferred with the outside consultant and adjusted prescribed medications as he determined medically appropriate and necessary for Mr. Baker.

Deliberate indifference involves both an objective and a subjective component. *See* Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Plaintiff Baker has failed to produce any evidence that Defendants objectively were indifferent to his serious medical needs. As to the subjective component, such is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

It is clear from the Plaintiff's medical records, (Special Report, Exhibit 1, [Doc.# 17-1]), that medical care was provided to Mr. Baker.  Where there is evidence of a series of sick calls, doctor visits, and even an outside consultations and diagnostic testing, it cannot be said that there was deliberate indifference by these Defendants to Mr. Baker's complaints.  *See* Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976).

What is clear is that Mr. Baker is simply voicing a difference of opinion as to the physician's determination of appropriate dosage of a prescribed medication and how best to maintain measured blood-levels of that medication within accepted therapeutic range. It is well settled that this type of disagreement, a difference of opinion, fails to give rise

19

to a cause of action under §1983.  *See* McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977), cert. denied, 435 U.S. 917 (1978), and cases cited therein.

Based upon the medical records (Special Report, Exhibit 1, [Doc.# 17-1]) and the testimony of Dr. Sanders (Exhibit 5 hereto) and Nurse Larimer (Exhibit 6), no reasonable trier of fact will find that these Defendants were deliberately indifferent to Plaintiff's medical needs.  As a result, summary judgment should be granted in favor of Defendants by this Honorable Court.

## PROPOSITION IV:

### SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF WARDEN YATES ON PLAINTIFF'S CLAIMS.

A review of Plaintiff's Complaint shows Plaintiff has made <u>no</u> specific allegations against Warden James Yates.  Plaintiff simply asserts Defendant Yates is the Warden and is in charge.

Certainly, as Warden, James Yates is in a supervisory position at the prison facility. However, case law has long established that the liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence.  *See* Langley v. Adams County, Colo., 987 F.2d 1473, 1481 (10th Cir.1993). To be guilty of "deliberate indifference," the defendant must know he is "creating a substantial risk of bodily harm."  *See* Billman v. Indiana Department of Corrections, et al., 56 F.3d 785, 788 (7th Cir.1995).  And, to establish a supervisor's liability under § 1983 Plaintiff must show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *See* Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir.1988); *see also* Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).

The record available for examination and review simply contains no facts showing Warden Yates had any special knowledge that could have been germane to determining the medical treatment of Plaintiff.  Warden Yates did review and sign the response to grievance 2016-1001-184-G on June 30, 2016.  As part of that grievance response, the facility Health Services Administrator had reported that Dr. Sanders had reviewed Mr. Baker's chart, had spoken with the neurologist, and Dr. Sanders had concluded Mr. Baker was on the best medication regiment.  See Ex. 4, Grievance Records, Pg. 19. And, the medical records, attached hereto as Special Report, Exhibit 1, [Doc.# 17-1] are devoid of any showing that Warden Yates had any part of the delivery of medical care and treatment to Plaintiff.

A claim brought under §1983 liability cannot be premised on a theory of *respondeat superior*.  To hold Defendant Yates responsible in a supervisory capacity, the factual record must demonstrate that he, (1) "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that, (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." *See* Pahls v. Thomas, 718 F.3d 1210, 1228 (10th Cir. 2013).

There simply are no facts that show Warden Yates created some sort of policy that caused harm to Mr. Baker.  And there certainly are no facts that show Warden Yates to have been in any way directly involved in the delivery of medical care to Plaintiff Baker.

Based on the foregoing, summary judgement should be granted by this Honorable Court in favor of Warden Yates.

## CONCLUSION

Plaintiff has failed to exhaust administrative remedies as to his claim of deliberate indifference to a serious medical need.  Mr. Baker has failed to present facts necessary to carry a claim of medical indifference against these Defendants. And, no facts exist to causally connect Warden Yates to Plaintiff's claim.  As a result, summary judgment should be granted in favor of Defendants.

WHEREFORE, premises considered, Defendants respectfully urge this Honorable Court to grant Summary Judgment to them on Plaintiff's claim(s) and grant them such other relief to which they may be entitled.

Respectfully submitted,
Defendants Yates, Larimer, and Sanders

By:_____
DARRELL L. MOORE, OBA 6332
P.O. Box 368
Pryor, OK 74362
(918) 825-0332/7730 fax
Attorney for CoreCivic Defendants

**Certificate of Service**

☑ I hereby certify that on November 5, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

☑ I hereby certify that on November 5, 2018, I served the attached document by regular US Mail on the following, who are not registered participants of the ECF System:

Christopher Olen Baker, 149839
Davis Correctional Facility
6888 E 133rd Rd
Holdenville, OK 74848

_____
DARRELL L. MOORE

23